CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
NOV 0 2 2010
JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| MICHAEL T. RODGERS, | Civil Action No. 5:10CV00036 |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | By: Honorable Glen E. Conrad<br>Chief United States District Judge |
| Defendant. | |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). As reflected by the memoranda and argument submitted by the parties, the issues before this court are whether the Commissioner's final decision is supported by substantial evidence, and if it is not, whether plaintiff has met the burden of proof as prescribed by and pursuant to the Act. Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Michael T. Rodgers, was born on December 31, 1964, and eventually completed his high school education. Mr. Rodgers served for four years in the United States Air Force. Plaintiff worked as a press operator. He last worked on a regular and sustained basis in 2006. On March 20, 2007, Mr. Rodgers filed an application for a period of disability and disability insurance benefits. Plaintiff alleged that he became disabled for all forms of substantial gainful employment on October 16, 2005 due to post-concussive syndrome, depression, anxiety, panic

attacks, memory problems, slowed thinking, pain in the neck and back, tremors, headaches, fear of being in public, suicidal thoughts, and paranoia. Plaintiff now maintains that he has remained disabled to the present time. The record reveals that Mr. Rodgers met the insured status requirements of the Act at all relevant times covered by the final decision of the Commissioner. See gen., 42 U.S.C. §§ 416(i) and 423(a).

Mr. Rodgers' claim was denied upon initial consideration and reconsideration. He then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated April 1, 2009, the Law Judge also determined that plaintiff is not disabled. The Law Judge found that Mr. Rodgers suffers from a severe affective disorder, severe diskogenic back disorder, and severe mental impairment. Because of these problems, the Law Judge ruled that Mr. Rodgers is disabled for his past relevant work role. However, the Law Judge determined that plaintiff retains sufficient functional capacity for any job that requires no more than unskilled, low stress work, and that "involves working with things rather than people." (TR 31). Given such a residual functional capacity, and after considering plaintiff's age, education, and prior work experience, as well as testimony from a vocational expert, the Law Judge found that plaintiff retains sufficient functional capacity for several specific work roles existing in significant number in the national economy. Accordingly, the Law Judge ultimately concluded that Mr. Rodgers is not disabled, and that he is not entitled to a period of disability or disability insurance benefits. See 20 C.F.R. § 404.1520(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mr. Rodgers has now appealed to this court.

While plaintiff may be disabled for certain forms of employment, the crucial factual determination is whether plaintiff was disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills, and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. It seems that Mr. Rodgers was injured while working on October 9, 2005, when a metal stair became unhinged and fell on his head. Thereafter, he complained of headaches, dizziness, and leg numbness, which were attributed to a post-concussive syndrome. In the months that followed, plaintiff developed severe psychomotor dysfunction. For the most part, his neurologists felt that his complaints were out of proportion to the severity of his traumatic head injury. The court believes that the Administrative Law Judge became overly focused on the clinical notes documenting this discrepancy. The medical records reveal, however, that in the meantime, Mr. Rodgers developed a significant psychiatric overlay consisting of elements of depression, anxiety, and conversion reaction. Mr. Rodgers' treating neurologist referred him to a psychiatrist, who provided regular treatment over a period of several years. The treating psychiatrist has consistently reported that Mr. Rodgers is totally disabled for all forms of work. Mr. Rodgers was ultimately hospitalized on two separate occasions for psychiatric treatment. None of the medical doctors who have actually seen and evaluated Mr. Rodgers have

3

suggested that he is capable of performing a regular work role on a sustained basis. The court finds that the Law Judge's assessment of plaintiff's residual functional capacity is not supported by substantial evidence. Moreover, given the findings and assessments of the treating psychiatrist, as well as the finding of all the attending physicians that plaintiff experiences severe and profound depression, which has resulted in two separate hospitalizations, the court concludes that Mr. Rodgers has met the burden of proof in establishing total disability for all forms of substantial gainful employment.

Following his work-related injury, Mr. Rodgers was referred by his treating physician to Dr. Nando Visvalingam, a neurologist. At the time of his initial evaluation on November 28, 2005, Dr. Visvalingam diagnosed a post-concussive syndrome, with residual symptoms of headaches, dizziness, and pain and numbness in the lower extremities. The neurologist referred Mr. Rodgers for appropriate diagnostic testing. He also recommended a neuropsychological evaluation, as well as additional neurological assessment at the University of Virginia Medical Center.

Dr. Audie Gaddis, a psychologist, completed an evaluation on March 8, 2006. Following administration and interpretation of psychological tests, as well as conduct of a clinical interview, Dr. Gaddis reported as follows:

> Michael's inconsistent responding on neuropsychological tests combined with the findings of the MMPI-II suggests a likely exaggeration of his current symptoms. Because of his response style, it is too difficult at this time to assess the extent of any post-concussion syndrome. In Mild Traumatic Brain Injury, it is not unusual to find difficulties in memory and cognition yet generally an individual's presentation is consistent with test performance. It does not appear that Michael functions at the level that the WAIS-III and WMS-III indicate. It is also not reasonable to understand why Michael would so focus on his physical problems once this evaluator learned that he grew up in an environment where his thoughts and feelings received minimal if any validation. This evaluator discussed these matters with Michael recommending that Michael make an appointment with a psychiatrist to discuss

medication options and enter into counseling with a psychotherapist. <u>There is no doubt that Michael is experiencing a significant depression with anxiety</u>. Once symptoms of depression and anxiety are ameliorated, Michael should be retested with clear instructions to perform as best as possible. In addition, if his reports of the extent of problems between he and his spouse are correct then they are in serious need of marital counseling to resolve the intensity of their conflicts. (emphasis added).

(TR 350). Dr. Gaddis diagnosed conversion disorder, major depression, and personality disorder. The psychologist assessed plaintiff's GAF as 55.[1]

Dr. Lawrence J. Conell, a psychiatrist, submitted his initial evaluation on April 4, 2006. Mr. Rodgers had been referred to Dr. Conell by the psychologist, Dr. Gaddis. After completing a clinical interview, Dr. Conell diagnosed depressive disorder, traumatic brain injury, and psychosocial stressors. The psychiatrist assessed plaintiff's GAF as 50-55.[2]

Dr. Visvalingam saw Mr. Rodgers again on May 19, 2006. Dr. Visvalingam suggested a new course of treatment, emphasizing remedial measures for depression and anxiety. At the request of Mr. Rodgers and his wife, who apparently did not believe that his symptoms were related to depression, Dr. Visvalingam arranged for a second opinion from a neurologist at the University of Virginia Medical Center.

In the meantime, Mr. Rodgers underwent an independent medical examination by another neurologist, Dr. Robert W. McMahon, Jr. Apparently, Mr. McMahon saw plaintiff in connection with an investigation of plaintiff's status under his employer's disability plan. Dr. McMahon

---

[1] The global assessment of functioning, or GAF, is used to report the clinician's judgment of the subject's overall level of functioning. A score of between 51 and 60 is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 47 (4th ed. text rev. 2000).

[2] A GAF score of between 51 and 60 is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning, and a score between 41 and 50 is indicative of serious symptoms or any serious impairment in social, occupational, or school functioning. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 48 (4th ed. text rev. 2000).

reviewed all the available medical records and conducted a clinical interview. Dr. McMahon concluded as follows:

> Mr. Rodgers is a 41-year-old left-handed white male who was reportedly in his normal state of health prior to a relatively minor closed head injury on October 9, 2005. This event may or may not have been associated with loss of consciousness. He appeared to develop fairly typical post-head injury symptoms of dizziness, headache, and mild cognitive changes in the first six to eight weeks following the injury. Since then, he has had an unusual progression and evolution of symptoms rather than the typically expected improvement. There appears to have been no new injury or insult to account for this. It is evident that there is a significant functional overlay to the quality of his somatic symptoms that appears to be disproportionate to the nature of the injury. However, the injury is the proximate inciting event to this adjustment difficulty. The opinions of his psychologist, counselor, and his neuropsychological testing are not available at this time for review. The patient is being referred to the Neurology Department at the University of Virginia for further evaluation and treatment.

(TR 282). In terms of the vocational considerations in plaintiff's case, Dr. McMahon opined that plaintiff had achieved his maximum level of recovery. The examiner noted that a neurological assessment was difficult because the functional overlay and depression in plaintiff's case are so significant. Dr. McMahon opined that plaintiff could not return to his previous job or any other job. (TR 282).

On September 8, 2006, Dr. Edwin Landaker, a neurologist at the University of Virginia Medical Center, evaluated Mr. Rodgers on referral from Dr. Visvalingam. By this time, plaintiff still complained of headaches, dizziness, and discomfort in the lower extremities. He also noted sleep disturbance and a tremor in his hands. Dr. Landaker also noted a variety of emotional symptoms. Following a review of plaintiff's medical records, and after conduct of a clinical examination, Dr. Landaker offered the following assessment:

> In summary, Michael Rodgers is a 41 year old gentlemen with a syndrome consisting of poor memory, poor concentration, abnormal behavior, depressed mood,

6

> neurovegetative symptoms, irritability and innumerable somatic complaints. His examination is completely intact objectively. His tremor appears to be functional rather than having an organic basis. Furthermore, during his strength testing he had diffuse give way weakness. His cognitive testing demonstrates a very odd pattern with deficits in orientation, immediate recall, and a finding of simultanagnosia. He also demonstrates poor frontal lobe task performance on listing but demonstrates no other frontal lobe dysfunction such as impaired Luria sequencing and frontal release signs. My initial impression is that his anxiety and depression are the largest contributors to his current dysfunction.

(TR 333-34).

Dr. Kathleen Fuchs, a psychologist, completed a repeat neuropsychological evaluation on November 30, 2006 at the request of the University of Virginia Medical Center neurology department. Following her evaluation, Dr. Fuchs concluded as follows:

> Mr. Rodgers' performance in this evaluation revealed a cognitively disengaged response style characterized as mental and motor slowness that may cause him to appear considerably more impaired than is the case. At this point it is difficult to determine to what degree, if at all, his mental disengagement is under his voluntary control. Mr. Rodgers appears to be experiencing a high level of depression and anxiety that could account for his observed deficits in psychomotor speed and attention. However, he reported persistently impaired cognition that fair [sic] exceeds what would be expected from a very mild head injury. This suggests the possibility that he is modifying some of his presentation to appear worse than he really is. Against the backdrop of a very mild head injury 14 months ago, the majority of his symptoms are likely a mixture of mood abnormalities and simulated symptoms. Given the nature and severity of his mental disengagement, Mr. Rodgers will likely have difficulty fulfilling occupational responsibilities at this time. We recommend continued treatment of his psychiatric distress with the aim of treating a possible underlying cause of his cognitive and motor slowness.

(TR 788).

Dr. Landaker saw Mr. Rodgers again on December 13, 2006. The neurologist interpreted Dr. Fuchs' neuropsychological evaluation as "evidence of severe depression, anxiety, and preoccupation with somatic concerns." (TR 306). Dr. Landaker indicated that plaintiff was suffering from "serious depression" and was greatly in need of continuing psychiatric intervention. (TR 308).

In a letter dated December 10, 2006, Dr. Lawrence Conell opined that plaintiff is totally disabled due to depression and anxiety which may or may not be related to his traumatic brain injury. Dr. Conell disputed any interpretation of the psychological reports to suggest that plaintiff's symptoms are overstated or that he is capable of "unrestricted work." (TR 838).

Dr. Conell saw Mr. Rodgers on an unscheduled basis on January 23, 2007. On that occasion, plaintiff had been missing from his home since January 5, 2007, and had been staying in his car in a parking lot. Based on plaintiff's measure of agitation and symptoms of suicidal ideation, Dr. Conell recommended that Mr. Rodgers go to the local hospital emergency room to seek admission to the mental health center.

Mr. Rodgers was hospitalized at the Rockingham Memorial Hospital Mental Health Center from January 23, 2007 through February 7, 2007. Plaintiff was treated based on a diagnosis of major depression with melancholic features, post-traumatic stress disorder, possible organic brain syndrome, and possible obsessive-compulsive personality disorder. At the time of admission, plaintiff's GAF was said to be 38. At the time of discharge, his GAF was assessed as 40.[3] Plaintiff was discharged with referral to the medical unit's partial hospitalization program. He was also directed to follow-up with Dr. Conell.

---

[3] GAF scores between 31 and 40 are indicative of some impairment in reality testing or communications or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 48 (4th ed. text rev. 2000).

Dr. Landaker saw Mr. Rodgers on April 17, 2007. The neurologist indicated that plaintiff was still suffering from severe depression, memory difficulties, and behavioral changes. Dr. Landaker did report some improvement with plaintiff's headaches.

Dr. Jeffery Barth completed a neuropsychological evaluation on June 21, 2007. In passing, the court notes that many of the other physicians and psychologists who had attended Mr. Rodgers had suggested that he be seen by Dr. Barth, who apparently was deemed to have special expertise in assessment of cognitive impairments associated with traumatic head injuries. Dr. Barth administered a variety of psychological tests, reviewed plaintiff's medical record, and conducted a clinical interview with both Mr. Rodgers and his wife. In terms of test results, Dr. Barth reported as follows:

> Test results from the present evaluation reveal an individual who demonstrates significant areas of neurocognitive deficit that fall below expected levels of functioning, which is judged to be inconsistent with the known recovery pattern from a mild, uncomplicated head injury. More specifically, Mr. Rodgers demonstrated normal verbal aptitude and academic abilities within the context of otherwise diffuse, below expected neurocognitive functioning. Impairments were observed on tests of attention/concentration, working memory, information processing speed, verbal fluency, visuospatial/constructional abilities, and learning and memory. Below expected performance was also observed on assessment of motor functions bilaterally. Sensory-perceptual testing revealed evidence of fingertip dysgraphesthesia, left worse than right. While Mr. Rodgers was observed to put forth adequate effort, this was judged to be contingent upon the examiner's continuous encouragement and support. Psychomotor retardation and slowness of mental processing are judged to have suppressed his overall performance. Assessment of his personality and emotional functioning revealed a response style that is consistent with individuals who possess an unusual degree of psychological turmoil and chronic maladjustment, as well as somatic complaints.
>
> In summary, test results indicate that Mr. Rodgers demonstrates substantive neurocognitive impairments.

(TR 884-85). The psychologist concluded as follows:

> Given the known typical course of recovery from mild head injuries, coupled with a thorough review of his previous evaluations and medical history, clinical impressions are that Mr. Rodgers' observed pattern of neurocognitive deficits is primarily functional/psychogenic in nature. Consistent with diagnostic impressions and clinical assessment of several of his previous evaluators as documented in medical records, Mr. Rodgers' present problems are judged to be secondary to a somatization disorder with significant depression/anxiety. While impressions are that Mr. Rodgers' psychological issues are primarily responsible for the observed areas of cognitive deficit, it is possible that his reported pain issues (headache, neck pain) also contribute to some degree. <u>Based on clinical observation and formal objective assessment, Mr. Rodgers' observed impairments are not likely due to intentional suboptimal effort, although the possibility of secondary emotional gain and/or adoption of the sick role cannot be ruled out. If such a process is present, however it is unlikely to be a conscious one</u>. (emphasis added).

(TR 885). Dr. Barth recommended ongoing, intensive psychiatric and psychotherapeutic intervention. Specifically, Dr. Barth recommended continuing care under Dr. Conell. The psychologist opined that plaintiff might be retrained for highly supervised work in a controlled and structured setting.

Mr. Rodgers was again hospitalized in a psychiatric unit from August 3, 2008 through August 26, 2008. He was again found to be suffering from severe depression with psychotic features. On this occasion, he also demonstrated marked paranoia. He was found to be suffering from suicidal ideation.

On February 16, 2009, Dr. Conell completed a medical statement of plaintiff's mental ability for work-related activities. Dr. Conell opined that plaintiff has no useful ability to function as to almost all work-related emotional components. He noted that Mr. Rodgers manifests extremely poor attention, focus, and concentration. Dr. Conell related that plaintiff continues to experience severe depression with a high level of anxiety, paranoia, and cognitive impairment.

10

In summary, the medical record confirms that plaintiff experiences significant emotional dysfunction. While substantial question has been raised as to whether Mr. Rodgers' symptoms can be related to his head injury, no doctor who has actually examined the plaintiff has suggested that he does not suffer from significant depression, anxiety, and occasional paranoia. No doctor of record who has actually seen Mr. Rodgers has suggested that he is capable of performing regular employment activities on a sustained basis. The only psychiatrist who has treated Mr. Rodgers on a regular basis has consistently concluded that plaintiff is totally disabled for all forms of work. The court believes that the Administrative Law Judge's decision to the contrary is simply not supported by substantial evidence.

In his opinion, the Administrative Law Judge relies on reports from several nonexamining state agency physicians in discrediting the observations and opinions of Dr. Conell. The Law Judge suggests that Dr. Conell's letter of December 10, 2007 is "clearly a disability advocacy document." (TR 41). The Law Judge also suggests that Dr. Conell's reports are inconsistent with the medical observations of the physicians and psychologists at the University of Virginia Medical Center.

The court does not believe that the Law Judge's treatment of Dr. Conell's reports and opinions, or the Law Judge's reliance on the reports of nonexamining state agency medical personnel, comport with the requirements of the Administrative Regulations dealing with the evaluation of opinion evidence. Under 20 C.F.R. § 404.1527(d)(1), it is explicitly provided that, generally, more weight will be given to the opinion of a medical source who has actually examined the claimant. Moreover, 20 C.F.R. § 404.1527(d)(2) directs that, generally, more weight is given to the opinions of treating sources, since such professionals are more likely to provide a detailed, longitudinal picture of the claimant's medical impairments. Finally, under 20 C.F.R. § 404.1527(d)(5), it is noted

that more weight is accorded to the opinion of a specialist about medical issues related to the area of specialty.

In the instant case, it is clear that Dr. Conell actually saw and treated Mr. Rodgers on several occasions, whereas the state agency physicians have never seen or examined the plaintiff. Moreover, there can be no question that Dr. Conell qualifies as a treating source. Finally, it appears to the court that Dr. Conell's impressions and conclusions are consistent with those of all the other physicians and mental health specialists who actually examined Mr. Rodgers. While citing the lack of any apparent correlation between plaintiff's head injury and the severity of his emotional symptoms, Dr. Visvalingam, Dr. Landaker, Dr. Gaddis, and Dr. Fuchs all found that plaintiff suffers from severe depression. Indeed, while the Administrative Law Judge relies on some portions of Dr. Fuchs' report in support of the implication that plaintiff is a malingerer, Dr. Landaker cited this neuropsychological report in support of the proposition that plaintiff's depression is severe. Dr. McMahon, an independent neurologist, found that Mr. Rodgers is totally disabled. As for the Law Judge's frequent observations that plaintiff's symptoms are out of proportion to the objective medical findings, the court finds that this discrepancy is addressed in clear terms by Dr. Barth, the neuropsychologist whose opinion was sought by many of the treating medical sources in this case. While Dr. Barth was unable to correlate all of plaintiff's symptoms with his traumatic head injury, Dr. Barth clearly stated that even if some of plaintiff's manifestations occurred because of lack of effort, such a process is "unlikely to be a conscious one." (TR 885). In the final analysis, Dr. Barth found that plaintiff suffers from severe emotional dysfunction and substantive neurocognitive impairments. Dr. Barth indicated that Mr. Rodgers requires psychiatric intervention, and that he is unable to perform gainful work in a traditional employment setting. In short, the court believes that Dr. Conell's opinions are

fully consistent with the medical reports from all of the treating and examining sources in Mr. Rodgers' case.

Finally, in passing, the court cannot help but note the degree to which the administrative assessment of this case varies from the actual facts of the matter. Following his injury, it appears that Mr. Rodgers participated in all of the treatment programs prescribed by his treating physicians. He engaged in therapy, and he followed through on all of the referrals to other experts. Mr. Rodgers has taken expensive and mood altering medication in an attempt to control his symptoms. More recently, he has been hospitalized on two separate occasions for treatment of severe and disruptive symptoms of emotional dysfunction. The circumstances of plaintiff's case belie any assertion of malingering or intentional goal-seeking behavior. The court concludes that Mr. Rodgers has met the burden of proof in establishing total disability for all forms of substantial gainful employment.

As suggested above, the medical record does not support establishment of disability onset through reference to the date of plaintiff's work-related injury. The court finds that the medical record demonstrates a continuing worsening in plaintiff's emotional condition. It is true that his depression and anxiety were not as severe at the time of the initial evaluations of his head injury as those conditions later proved to be. At the time of his initial evaluation, Dr. Conell estimated plaintiff's GAF as between 50 and 55. His GAF was said to have been 40 at the time of discharge from his initial psychiatric hospitalization. Accordingly, the court concludes that it was not until the time of his first psychiatric hospitalization that plaintiff's symptoms became so severe as to prevent performance of all forms of substantial gainful activity. The court concludes that Mr. Rodgers has met the burden of proof in establishing that he became disabled for all forms of substantial gainful employment on February 7, 2007.

For the reasons stated, the court is constrained to conclude that the Commissioner's final decision is not supported by substantial evidence. Defendant's motion for summary judgment must be denied. Upon the finding that the plaintiff has met the burden of proof as prescribed by and pursuant to the Act, judgment will be entered for plaintiff. The final decision of the Commissioner will be reversed and the case recommitted to the Commissioner for computation and award of appropriate benefits. A judgment and order in conformity will be entered this day.

The Clerk is directed to send certified copies of this memorandum opinion to all counsel of record.

DATED: This 3rd day of November, 2010.

_____
Chief United States District Judge